**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

DE'QUANTEZ NIXSON,

        **Plaintiff,**

                                    **Civil Action 2:18-cv-1720**

     **v.**                           **Magistrate Judge Kimberly A. Jolson**

MICHAEL DAVIS,

        **Defendant.**

## OPINION AND ORDER

This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 11), is before the Court on Defendant's unopposed Motion for Summary Judgment (Doc. 15) and Plaintiff's Motion for a Preliminary Injunction (Doc. 3 at 6). For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for a Preliminary Injunction is **DENIED**.

## I.     BACKGROUND

Plaintiff, a pro se prisoner, has brought this action against Defendant Michael Davis, the Religious Services Administrator for the Ohio Department of Rehabilitation and Correction ("ODRC"). (Doc. 3). In brief, Plaintiff alleges that he was denied kosher meals in violation of his constitutional rights under the First Amendment and his statutory rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). (*See generally id.*).

Plaintiff has been serving a custodial sentence since March 2013. He was first incarcerated at the Southern Ohio Correctional Facility and was later transferred to the Ohio State Penitentiary. (Doc. 3 at 3; Doc. 15 at 2). When his incarceration first began, Plaintiff identified as a Christian.

(*See* Doc. 15-5 at 2).  Since then, he has requested to change his religious affiliation twice.  First, in January 2016, he sought to change his religion from "Christian" to "Rostafarian [sic]."  (*Id.*).  He represented that he had "been practicing the rostafarian [sic] religion" for "[t]he past 6 months" and sought to "join [his] family in prayers with Jive for they are all natural rostafarian [sic]."  (*Id.*).  The request was granted.  (*See* Doc. 15-1, ¶ 14).

Roughly two years later, on March 17, 2018, Plaintiff requested to change his religion again, from "Rastafari" to "Jewish Orthodox."  (*Id.* at 1).  Plaintiff again cited family ties—but this time, to Judaism.  (*Id.*).  He also submitted a request for kosher meals.  (Doc. 15-6 at 1–2).  As part of his request, Plaintiff submitted written responses to several basic questions, including why the requested accommodation was necessary to practice his religion.  (*See id.*).  Because Plaintiff simply responded, "kosher meals!" *(id.*), Defendant returned Plaintiff's form and requested more information.  (Doc. 15-1, ¶ 10).  It does not appear from the record that Plaintiff ever supplemented that request.  Instead, he submitted a new request for kosher meals.  (Doc. 15-6 at 3–4).  In answering the same question, Plaintiff wrote that kosher meals were necessary because they "allow [him] to purify [his] soul."  (*Id.* at 4).

Chaplain Donald York met with Plaintiff to evaluate his request and found that Plaintiff "'seem[ed] sincere in his desire for kosher meals.'"  (Doc. 15-2, ¶ 15).  But Defendant, as ODRC's Religious Services Administrator, had the final say.  (*See* Doc. 15 at 3–4 (citing 72-REG-02(H)(1) (providing that new dietary requests, including for kosher meals, shall be referred to the religious services administrator)).  And he came to a different conclusion.  Based upon "the discrepancies in [Plaintiff's] stories and religious history" and that Plaintiff had purchased "numerous items that do not adhere to the kosher diet of a sincere Orthodox Jew," Defendant concluded that Plaintiff

was not sincere in his belief in Judaism or request for kosher meals. (*Id.*, ¶¶ 14, 15). As a result, Defendant denied Plaintiff's request.

A few months after Defendant denied his request, Plaintiff went on a hunger strike. (Doc. 15-3, ¶ 8). But Defendant's decision to deny him kosher meals was only one of the reasons Plaintiff refused to eat. (*See* Doc. 15-16 at 2). In addition, Plaintiff reported refusing meals because his "[p]roperty was taken" and his "laundry was lost [and] [his] last theft report was refused to be filed." (*Id.*). In all, Plaintiff's hunger strike lasted seven days, and he lost about nine pounds. (Doc. 15-4, ¶¶ 19, 21). The uncontroverted record shows that medical staff provided around-the-clock monitoring during Plaintiff's hunger strike, and Plaintiff consistently denied any pain, discomfort, depression, or distress. (*Id.*, ¶ 16; Doc. 16-4, ¶¶ 16–21).

Plaintiff then filed this lawsuit. (*See* Doc. 3). In his Complaint, Plaintiff alleges that he is an Orthodox Jew and that Defendant denied his request for kosher meals in violation of the First Amendment and RLUIPA. (*Id.* at 5). He further alleges that, due to Defendant's conduct, he suffered severe depression, weight loss, and emotional distress. (*Id.*) For relief, Plaintiff seeks $75,000 in punitive damages and $75,000 in compensatory damages from Defendant in both his individual and official capacities. (*Id.* at 6). He also seeks a preliminary injunction requiring Defendant grant his request for kosher meals. (*Id.*)

Defendant has moved for summary judgment. (Doc. 15). Over four months have passed since Defendant filed his Motion, and Plaintiff has not responded. Accordingly, the matter is now ripe for resolution.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). When the moving party has carried this burden, the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

When a motion for summary judgment is unopposed, as is the case here, the court must "intelligently and carefully review the legitimacy of such unresponded-to motion" and may not "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Tp. Tr.*, 980 F.2d 399, 407 (6th Cir. 1992). At the same time, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to identify a genuine issue of material fact. *Id*. at 405.

### III. DISCUSSION

Defendant has moved for summary judgment on both Plaintiff's First Amendment and RLUIPA claims. (*See generally* Doc. 15). Up front, Defendant moves for summary judgment on Plaintiff's claim for monetary damages against him in his official capacity. (Doc. 15 at 29–30). The Eleventh Amendment precludes Plaintiff from recovering these damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Turker v. Ohio Dep't of Rehab & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Moreover, the Eleventh Amendment bars any monetary relief under RLUIPA. *Berryman v. Granholm*, 343 F. App'x 1, 4 (6th Cir. 2009). Consequently, Plaintiff is not entitled to much of the relief he requests.

4

The Court will now consider the merits of Plaintiff's First Amendment claim for monetary damages and injunctive relief against Defendant in his individual capacity and Plaintiff's RLUIPA claim for injunctive relief.

### A. First Amendment Free Exercise Claim

In assessing Plaintiff's First Amendment claim, context matters because such review looks different in the prison context. *See Flagner v. Wilkinson*, 241 F.3d 475, 481–82 (6th Cir. 2001). Rather than applying the test "ordinarily applied to alleged infringements of fundamental constitutional rights," courts instead apply a "less restrictive analysis." *Id.* Courts apply this more lenient standard "[t]o ensure that [they] afford appropriate deference to prison officials." *Id.* The analysis has two steps.

First, a court must decide whether the inmate has established the basic elements of a free exercise claim. To satisfy this initial burden, the inmate "must show that the belief or practice asserted is religious in [his] own scheme of things and is sincerely held." *Id.* at 481 (quotation marks and citation omitted). If the inmate can make that showing, the court then applies the balancing test set forth in *Turner v. Safley,* 482 U.S. 78, 89 (1987), to determine whether the defendant's conduct was reasonable. The test is deferential to prison officials and asks whether the regulation that impinges on inmates' constitutional rights "is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. *Flagner*, 241 F.3d at 481. If so, the regulation is valid. *Id.* At base, the Turner balancing analysis is a "reasonableness test" that is deferential to prison officials. *Id.*

Here, Defendant challenges Plaintiff's constitutional claim in two ways. Relying on the record, he argues that Plaintiff's Jewish beliefs are insincere. (Doc. 15 at 15–18). Without sincerity, Defendant argues, Plaintiff's free exercise claim fails. (*See id.*). But even if Plaintiff's

5

beliefs are sincere, Defendant maintains that because his actions were reasonable, Plaintiff's constitutional claim cannot succeed. (*Id*. at 18–20).

### 1. Sincerity

To begin, Plaintiff must show that his beliefs "are sincerely held and whether they are, in his own scheme of things, religious" in order to succeed on his free exercise claim. *United States v. Seeger*, 380 U.S. 163, 185 (1965); *see also Flagner*, 241 F.3d at 481. The record contains uncontroverted evidence to support Defendant's contention that Plaintiff's belief is insincere.

First, the record reveals contradictory timelines. Plaintiff originally attested to practicing Judaism "since [he] was a child," (Doc. 15-6 at 2), but reported a few short months later that he had been practicing Judaism "since Oct-15-2015," (*id*. at 4). But in October 2015, Plaintiff was still practicing the Rastafarian religion. (*See* Doc. 15-5 at 3). Further, the record shows that Plaintiff has changed his story regarding his family connections to Judaism. For example, when he sought to change from Christian to Rastafarian, Plaintiff stated that his family members were "all natural rostafarian [sic]" and that his "whole family is based upon this religion." (*Id*. at 2–3). But when he later applied to switch from Rastafarian to Judaism, he stated that he hoped to "take[] up [his] family religion." (Doc. 15-6 at 3). Finally, and perhaps most telling, Plaintiff's commissary records reveal that he purchased hundreds of non-kosher items despite his multiple requests for kosher meals. (*See* Doc. 15-13 (showing that of the 230 food items Plaintiff purchased between March 17, 2018, and early October 2019, over half were non-kosher)).

Based upon this evidence, the Court is skeptical of Plaintiff's sincerity. But the sincerity of a plaintiff's religious belief is, generally, a question of fact. *See Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, *2 (6th Cir. July 30, 1997). And considering Plaintiff's pro se status,

the best approach is to assume, for the purposes of Defendant's Motion, that Plaintiff's belief is sincere.

### 2. *Turner Balancing Test*

But the Court's analysis is not over. The Court must now consider, under the deferential *Turner* balancing test, whether Defendant's conduct was reasonable. In *Turner*, the Supreme Court recognized the unique challenges of operating a prison. *Turner*, 482 U.S. at 85. It cautioned courts to exercise restraint when considering prison policies designed to maintain security and discipline. *See id*. So, "[i]n most circumstances," "'the adoption and execution'" of these policies "'should be accorded wide-ranging deference.'" *O'Connor v. Leach*, No. 1:18-CV-977, 2020 WL 838084, at *2 (W.D. Mich. Jan. 27, 2020), *report and recommendation adopted*, No. 1:18-CV-977, 2020 WL 837267 (W.D. Mich. Feb. 20, 2020) (quoting *Flagner*, 241 F.3d at 481). Courts must balance that deference with the important need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85.

In attempting to strike this balance, courts consider four factors:

(1) there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
(2) whether there are alternative means of exercising the right that remains open to prison inmates;
(3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
(4) whether there are ready alternatives available that fully accommodate the prisoner's rights at a *de minimis* cost to valid penological interests.

*Id*. at 89–91.

The first factor is a threshold requirement. *See Hanrahan v. Mohr*, 905 F.3d 947, 954 (6th Cir. 2018). The defendant carries "the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest that motivated it."

*O'Connor*, 2020 WL 838084 at *3.  If the defendant cannot meet that burden, "the regulation is unconstitutional, and the other factors do not matter."  *Hanrahan*, 905 F.3d at 954 (quotation marks and citations omitted).  But the burden is light.  *See O'Connor*, 2020 WL 838084 at *3 (quotation marks and citation omitted) (noting that the defendant's initial burden under *Turner* "is slight, and in certain instances, . . . a matter of common sense").

If the defendant makes that showing, the court turns to the remaining three factors.  These "should be balanced together" rather than "weighed evenly."  *Flagner*, 241 F.3d at 484.  In doing so, the court should not apply "a 'least restrictive alternative' test."  *Id*.  Said differently, the defendant "do[es] not have to set up and then shoot down every conceivable alternative method of accommodating [the plaintiff's] constitutional complaint."  *Id*.  Rather, the *Turner* factors are more usefully viewed as "guidelines for the court to assess whether the prison officials' actions are reasonably related to a valid penological basis."  *Id*.

### i.  Rational Connection to Legitimate Government Interest

Under the first *Turner* factor, Defendant's motivation matters.  His conduct was reasonable only if he denied Plaintiff's request for a legitimate penological reason. The uncontroverted evidence in this case establishes that he did.

In his sworn affidavit, Defendant asserts that he denied Plaintiff's request for kosher meals because he determined that Plaintiff's request "was not sincere."  (Doc. 15-1, ¶ 14).  In reaching that conclusion, Defendant relied on the totality of the evidence before him.  First, he relied on Plaintiff's written responses to questions regarding his accommodation request and found those responses to be lacking.  (*See id*.).  For example, he noted "discrepancies in [Plaintiff's] stories and religious history," including conflicting timelines and contradictory assertions regarding

Plaintiff's family connections to Judaism. (*Id*.). Defendant also found that "[m]ost of [Plaintiff's] replies were general in nature and not fully consistent with Jewish beliefs." (*Id*.).

Defendant then went beyond Plaintiff's written responses. He reviewed Plaintiff's commissary records, which revealed that Plaintiff routinely purchased non-kosher items from the commissary. (*Id*., ¶ 15; *see also* Doc. 15-13 (indicating that of the 230 food items purchased between March 17, 2018, and early October 2019, more than half were non-kosher)). In Defendant's opinion, these purchases showed that, despite Plaintiff's multiple requests for kosher meals, Plaintiff did not attempt to "adhere to the kosher diet of a sincere Orthodox Jew." (*Id*.).

The Sixth Circuit has provided on-point guidance for this type of situation. "Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison." *Berryman v. Granholm*, 343 F. App'x 1, 4 (6th Cir. 2009) (holding that defendant reasonably removed plaintiff from the kosher meal program because plaintiff "ordered," "signed for," and "held [in] his lap" non-kosher food items) (citing *Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (concluding that, in light of a prisoner's "obvious actions in not observing the kosher food requirements outside meals," the prison had a legitimate penological interest in removing the prisoner from the program because of the need to maintain discipline in the facility)). Indeed, it would be difficult to maintain security if prison officials "permitt[ed] [an inmate] to participate in a religious diet program when he has a demonstrated history of consuming or purchasing food in violation of the tenets of his stated religion" because it "could cause resentment among prisoners who adhere to their faith's dietary restrictions." *Ewing v. Finco*, No. 1:17-CV-505, 2019 WL 8105992, at *9 (W.D. Mich. Sept. 18, 2019), *report and*

*recommendation adopted*, No. 1:17-CV-505, 2019 WL 6485869 (W.D. Mich. Dec. 3, 2019) (quotation marks and citation omitted).

Given the legitimate interest in maintaining discipline and security, district courts routinely defer to prison officials in these circumstances. *See, e.g.*, *O'Connor*, 2020 WL 838084, at \*3 (granting prison official's motion for summary judgment where prison official denied plaintiff's request for kosher meals, in part, because plaintiff contemporaneously purchased non-kosher food items); *Miles v. Mich. Dep't of Corr.*, No. 1:18-CV-352, 2019 WL 4621979, at \*3 (W.D. Mich. Sept. 24, 2019) (adopting magistrate judge's recommendation granting defendant's motion for summary judgment and confirming that plaintiff's removal from the kosher meal program was proper because plaintiff had purchased non-kosher items); *Moses v. Finco*, No. 1:16-CV-248, 2019 WL 5273780, at \*4 (W.D. Mich. Jan. 7, 2019), *report and recommendation adopted*, No. 1:16-CV-248, 2019 WL 4439368 (W.D. Mich. Sept. 17, 2019) (granting defendant's motion for summary judgment and noting "that the mere purchase or possession of foods contrary to a requested diet is sufficient to deny a prisoner's request for that specific diet"); *Nassar v. Warden, Butler Cty. Jail*, No. 1:10-CV-031, 2011 WL 7268004, at \*7 (S.D. Ohio Sept. 1, 2011), *report and recommendation adopted sub nom. Nassar v. Butler Cty. Jail*, No. C-1-10-31, 2012 WL 423754 (S.D. Ohio Feb. 9, 2012) (granting defendants' motion for summary judgment and noting that preserving discipline and security "are legitimate reasons for an inmate who breaks the dietary rules").

Defendant is entitled to that deference here, and this factor is in his favor.

### ii.  Remaining *Turner* Factors

On balance, the three remaining *Turner* factors also weigh in Defendant's favor.  To begin, Plaintiff has alternative means to maintain a kosher diet.  As his commissary records show,

Plaintiff may purchase kosher food from the prison's commissary. *See, e.g.*, *O'Connor,* 2020 WL 838084, at *4 (noting that prisoners can order kosher food items from the prison store); *Moses*, 2019 WL 5273780, at *4 (same); *Ewing*, 2019 WL 8105992, at *9 (same). Plaintiff may also reapply for kosher meals in roughly four months. (*See* Doc. 15 at 19); *see, e.g*., *O'Connor,* 2020 WL 838084, at *4 (noting that "[t]here is also no evidence that [p]laintiff is unable to re-apply in the future to participate in the kosher meal program"); *Ewing*, 2019 WL 8105992, at *9 (noting that plaintiffs were "not permanently barred from receiving a religious diet accommodation, as they can reapply for such as provided in the relevant [] [p]olicy [d]irective").

Next, even assuming these alternative means are subpar compared to the kosher meal program, the impact of granting Plaintiff's request "on the allocation of prison resources (because of the expense required to maintain the kosher meal program) would be weighty if prisoners participating in the program were able to order and eat whatever food they wanted without suffering any consequences." *Berryman*, 343 F. App'x at 5 (internal quotation marks omitted).

The final factor applies only where "an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 91. If the inmate makes that showing, "a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id*. But there is no such evidence in this case.

In sum, the weight of the *Turner* factors supports a finding of reasonableness, and Defendant is entitled to summary judgment on Plaintiff's First Amendment claim.

### B. RLUIPA Claim

Defendant also moves for summary judgment on Plaintiff's RLUIPA claim. (Doc. 15 at 20–21). But in so moving, Defendant asserts only that Plaintiff cannot recover monetary damages

under RLUIPA. (*See id.*). While he is correct on that point, *see Berryman*, 343 F. App'x at 4, the Court construes Plaintiff's request more broadly. Construed liberally, it appears that Plaintiff is seeking an order directing Defendant to grant his request for kosher meals. (*See* Doc. 3 at 6). The Court will consider Plaintiff's RLUIPA claim accordingly.

In evaluating a RLUIPA claim, the principle inquiry is "whether the challenged governmental action substantially burdens the exercise of religion." *Ervin v. Davis*, No. 2:16-CV-186, 2017 WL 2573251, at *3 (S.D. Ohio June 14, 2017) *report and recommendation adopted*, No. 2:16-CV-186, 2017 WL 3600447 (S.D. Ohio Aug. 21, 2017) (quotation marks omitted) (citing *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010)). Plaintiff bears the burden to make this showing. *Perreault v. Mich. Dep't of Corr.*, No. 1:16-CV-1447, 2018 WL 3640356, at *4 (W.D. Mich. Aug. 1, 2018).

While RLUIPA does not define "substantial burden," courts agree that the burden must be "exceptional." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005); *see also Perreault*, 2018 WL 3640356, at *4 (noting that the burden must render religious exercise "effectively impracticable"). Under this stringent standard, the "denial of participation [in a kosher meal program] does not constitute a substantial burden unless the [] denial is *permanent*." *Perreault*, 2018 WL 3640356, at *4 (emphasis in original); *see also O'Connor*, 2020 WL 838084, at *4 (holding the same); *Ewing*, 2019 WL 8105992, at *10 (holding the same). As noted, Plaintiff can reapply for the kosher meal program in August, one year after Defendant denied his request. (*See* Doc. 15 at 9).

Moreover, as a practical matter, "[i]f an inmate chooses to purchase and consume non-kosher snacks,"—which Plaintiff has done here—"he cannot show that . . . denying kosher meals to him constitutes a substantial burden on his ability to practice the tenets of his faith." *Day v. Mathai*, No. 05-CV-71311, 2008 WL 907378, at *14 (E.D. Mich. Mar. 7, 2008), *report and*

*recommendation adopted*, No. 05-71311, 2008 WL 907377 (E.D. Mich. Mar. 31, 2008). So, Plaintiff has not shown that his ability to practice his faith has been substantially burdened.

Moreover, even if Defendant's conduct constituted a substantial burden—which it did not—RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722. So, as with First Amendment claims in the prison context, courts must apply RLUIPA "with due deference to the experience and expertise of prison and jail administrator in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* (quotation marks and citation omitted).

Put simply, prisons must have some way to limit religious dietary accommodations to those with sincerely held beliefs. Defendant reasonably concluded, based on the totality of the circumstances, that Plaintiff's request was not sincere. The Court will not disrupt that finding, and Defendant is entitled to summary judgment on Plaintiff's RLUIPA claim.

### C. Plaintiff's Motion for a Preliminary Injunction

One final issue. In his Complaint, Plaintiff asks the Court to "order an [sic] preliminary injunction against [Defendant] to authorize Plaintiff kosher meals." (Doc. 3 at 6). Defendant construes that request as a motion for a preliminary injunction. (*See* Doc. 15 at 22). The Court does the same.

As explained above, Defendant is entitled to summary judgment on Plaintiff's First Amendment and RLUIPA claims. Consequently, Plaintiff cannot show a strong likelihood of success on the merits of his claims. His request for the extraordinary measure of a preliminary injunction fails as a result. *See Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2–02–178, 2002 WL 3140935, at *3 (S.D. Ohio August 12, 2002) (citations omitted) ("[T]he Sixth Circuit has held

13

that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. Failure to do so is reversible error."). Plaintiff's Motion for a Preliminary Injunction is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 15), is **GRANTED**.

IT IS SO ORDERED.


Date:   April 21, 2020                                    /s/ Kimberly A. Jolson
                                                          KIMBERLY A. JOLSON
                                                          UNITED STATES MAGISTRATE JUDGE